UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| WILLIAM A. APIRE, )<br>)<br>    PLAINTIFF )<br>)<br>v. )<br>)<br>WHOLE FOODS MARKET GROUP, )<br>INC., )<br>)<br>    DEFENDANT ) | CIVIL NO. 2:15-CV-479-DBH |

**DECISION AND ORDER ON DEFENDANT'S
PARTIAL MOTION TO DISMISS**

The defendant Whole Foods Market Group, Inc. (Whole Foods) has moved to dismiss four Title VII civil rights counts in the plaintiff Apire's First Amended Complaint on the basis that the plaintiff failed to file a timely administrative charge.[1] Title VII of the Civil Rights Act requires that a plaintiff file a timely administrative charge as a condition to bringing suit. 42 U.S.C.A. § 2000e-5(e)(1) (2009 & Supp. 2015); see Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002); Frederique-Alexandre v. Dep't of Nat. & Envtl. Res. P.R., 478 F.3d 433, 437 (1st Cir. 2007). I **DENY** the defendant's motion.

Because Maine is a so-called deferral state,[2] the plaintiff was entitled to file his documents with the Maine Human Rights Commission (MHRC), and that

---

[1] The Equal Employment Opportunities Commission (EEOC) did issue the plaintiff a right-to-sue letter.

[2] A deferral state is a state that has its own employment discrimination law and its own enforcement agency. See 42 U.S.C.A. § 2000e-5(c); 14A C.J.S. Civil Rights § 536. In a deferral state, although a complainant may simultaneously file his complaint with both the state agency

is what he did.  The MHRC concluded that the plaintiff had filed sufficient documents to amount to a timely charge.  Def.'s Partial Mot. to Dismiss at Ex. 2, 3 (ECF No. 13) ("Def.'s Mot.").  But the parties agree that federal law applies to Equal Employment Opportunities Commission (EEOC) charges in determining whether what the plaintiff filed with the MHRC was sufficient.  See Def.'s Mot. at n.4; Pl.'s Mem. in Opp'n to Def.'s Partial Mot. to Dismiss at 4-5 (ECF No. 18) ("Pl.'s Opp'n").[3]

Title VII itself "does not define the term charge."  Fed. Express Corp. v. Holowecki, 552 U.S. 389, 395 (2008).  But an EEOC regulation lists a number of elements that a "charge should contain."  29 C.F.R. § 1601.12(a) (2015).  Then subsection (b) of that regulation states:

> Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge *a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of*.  A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein.  Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of

---

(here, the Maine Human Rights Commission) and the EEOC, the EEOC must defer to the state officials to allow them a reasonable time—not less than sixty days, unless proceedings under state law have been terminated earlier—to remedy the alleged violation, which "encourage[s] the maximum degree of effectiveness in the State and local agencies."  29 C.F.R. § 1601.13 (2015); 42 U.S.C.A. § 2000e-5(c), (d); see Mohasco Corp. v. Silver, 447 U.S. 807, 821-22 (1980).  "After the expiration of [this] exclusive processing period, the [EEOC] may commence processing the allegation of discrimination."  29 C.F.R. § 1601.13.

[3] The First Circuit has not yet answered the question whether a District Court Judge may defer to a state agency's determination regarding whether a complainant has filed sufficient information to amount to a timely charge when a complainant brings his federal claims to federal court after exhausting the state procedure, see Aly v. Mohegan Council, Boy Scouts of Am., 711 F.3d 34, 44 (1st Cir. 2013), and the parties have not briefed this issue.  Because I conclude that the documents submitted by the plaintiff are sufficient under Supreme Court and First Circuit precedents and the EEOC regulations (and because the procedures under federal law are nearly identical to the state procedures in Maine), I need not address this issue.  Cf. Edelman v. Lynchburg Coll., 535 U.S. 106, 114 (2002) ("Because we so clearly agree with the [agency], there is no occasion to defer and no point in asking what kind of deference, or how much.").

> the subject matter of the original charge will relate back to the date the charge was first received. . . .

29 C.F.R. § 1601.12(b) (emphasis added).  The Supreme Court ruled that this subsection—allowing a late verification to relate back to an earlier filed document—was "an unassailable interpretation" under Title VII, Edelman v. Lynchburg Coll., 535 U.S. 106, 118 (2002), but it did so without finding it necessary to rule whether the EEOC generally deserved discretion in its regulations interpreting what constitutes a "charge," id. at 114.  Later, however, in Federal Express Corp. v. Holowecki, the Supreme Court did defer to the EEOC in interpreting comparable charging regulations in an Age Discrimination in Employment Act (ADEA) case, but it added one requirement.  552 U.S. at 392, 395, 402 (dealing with 29 C.F.R. §§ 1626.8(b), 1626.6).  In Holowecki, the Supreme Court stated:

> We conclude as follows: In addition to the information required by the regulations, *i.e.*, an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.

Id. at 402.  The filing provisions of the ADEA and Title VII are virtually the same, "the former having been patterned after the latter." Aly v. Mohegan Council, Boy Scouts of Am., 711 F.3d 34, 42 n.1 (1st Cir. 2013) (internal quotation marks omitted).

Whole Foods does not focus its argument on whether the documents that the plaintiff Apire did timely file in this case satisfied the criteria of 29 C.F.R. § 1601.12(b) and Holowecki.  What the plaintiff—pro se at the time—filed was a

3

completed MHRC Intake Questionnaire and an attached statement.[4] The thrust of Whole Foods's argument is that any filings the plaintiff did make in a timely fashion were insufficient because the MHRC warned the plaintiff repeatedly that he needed to do more than file the completed Intake Questionnaire. See Def.'s Mot. at 2-3. Specifically, the "Instructions for Intake Questionnaire" stated: "**Completing this Intake Questionnaire does not mean that a Complaint of Discrimination has been filed**"; and "A COMPLAINT OF DISCRIMINATION IS FILED WITH THE MAINE HUMAN RIGHTS COMMISSION WHEN A SIGNED, NOTARIZED COMPLAINT FORM IS RECEIVED BY THE COMMISSION. SIGNED, NOTARIZED COMPLAINTS MUST BE RECEIVED BY THE COMMISSION WITHIN THREE HUNDRED (300) DAYS OF THE ALLEGED ACT OF DISCRIMINATION." Def.'s Mot. at Ex. 6. Moreover, on October 8, 2013, an MHRC Intake Officer mailed the plaintiff completed draft complaint discrimination forms for him to review and have notarized, telling him in the cover letter: "a complaint must be filed within 300 days of the date of the alleged discrimination"; and that it was "imperative" that he return the documents "as soon as possible."[5] Def.'s Mot. at

---

[4] I am not sure that, in moving to dismiss, the defendant has furnished a complete record of what the plaintiff filed administratively. The defendant has attached to its motion Exhibit 1, which purports to be a completed Intake Questionnaire received by the MHRC on August 23, 2013, with an attached typed statement. But the typed statement ends at the bottom of page four in mid-sentence. It appears that there should be a carry-on page or pages. Further, the Executive Director's letter to the plaintiff's attorney on August 5, 2014, references an online intake form that the plaintiff filed on July 30, 2013. See Def.'s Mot. at Ex. 2. This document has not been submitted to the court.

[5] The defendant also refers to an August 23, 2013, MHRC email to the plaintiff's lawyer concerning the need to submit a notarized complaint, but the record does not disclose when the lawyer actually agreed to represent the plaintiff. The MHRC Executive Director's letter of August 5, 2014, states:
> [O]n August 23, 2013, we received a phone call from Complainant asking if we could forward his intake to [this lawyer]; we did so via email that day. In the Case Controller's August 23, 2013 email to you, we asked you if you would be submitting a complaint or if Complainant would prefer that we draft one for him.

Ex. 8.  The plaintiff failed to do so until his lawyer filed completed verified complaint forms on May 27, 2014.  See Def.'s Mot. at Ex. 4.

It is sound policy that the MHRC warns people (often without lawyers) who are trying to assert their rights what the MHRC wants them to file, and its advice is designed to ensure that there can be no issue later over adequacy of the filings.  But in determining whether this federal civil rights lawsuit is barred, I measure what the plaintiff did file against the federal EEOC regulation and Supreme Court requirements, not the warnings that the MHRC gave to the plaintiff.  The completed Intake Questionnaire with the attached typed statement satisfied all of section 1601.12(b) and Holowecki, but for the verification requirement.[6]  As stated in section 1601.12(b) and the Supreme Court in Edelman v. Lynchburg College, that requirement can be satisfied later, as it was in this case.

The Supreme Court has recognized that the requirements for a charging document amount to a "permissive standard," and may allow "a wide range of documents [to] be classified as charges.  But this result is consistent with the design and purpose of the ADEA."  Holowecki, 552 U.S. at 402.  The same is true

---

We heard nothing back from you or your client until October 7, 2013, when Complainant himself called here.

Def.'s Mot. at Ex. 2.  I cannot tell from this exchange that the lawyer had yet undertaken to represent the plaintiff.  The Executive Director's letter goes on to state that "[o]n October 8, the Intake Officer spoke with the Complainant and obtained additional details relating to his claim," and then mailed to him a complaint form alleging unlawful discrimination and asking that it be notarized.  Id.  If anything, that course of events suggests that the plaintiff was not yet represented by counsel.  "We heard nothing thereafter until we received the complaint you [counsel] filed on behalf of Complainant on May 27, 2014."  Id.  In any event, legal representation earlier would not change my conclusion.  I measure what the plaintiff timely filed against the criteria of section 1601.12(b) and Holowecki, and I conclude that the plaintiff's filings are sufficient.

[6] The completed Intake Questionnaire states: "I WISH TO FILE A COMPLAINT AGAINST" and there the plaintiff filled in the defendant's name and relevant supervisor, thus satisfying Holowecki.  The information in the completed Intake Questionnaire and the typed attachment "is sufficiently precise to identify the parties" and "describe[s] generally the action or practices complained of."  29 C.F.R. § 1601.12(b).

5

of Title VII. See id. ("The ADEA, like Title VII, sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." (internal quotation marks omitted)).  The Supreme Court has also pointed out that pro se litigants confront lesser pleading standards even in formal litigation.  Id.; see id. at 403 ("The system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes.  It thus is consistent with the purposes of the [ADEA] that a charge can be a form, easy to complete, or an informal document, easy to draft."); see also Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756 (1979) (noting the "common purpose" of Title VII and the ADEA).

  The defendant relies heavily on a pre-Holowecki case from this court, Frank v. L.L. Bean, Inc., No. Civ. 04-221-P-S, 2006 WL 47557 (D. Me. Jan. 9, 2006), report and recommendation adopted, No. Civ. 04-221-P-S, 2006 WL 462339 (D. Me. Feb. 23, 2006).  In Frank, the MHRC claimed never to have received even a completed Intake Questionnaire, although Frank claimed she had sent one.  Id. at *6.  The MHRC dismissed Frank's later complaint as untimely, the EEOC followed suit, and the Magistrate Judge ultimately granted the employer's motion for summary judgment.  Id. at *6-7, 10.  But here, the MHRC distinguished Frank in ruling that this plaintiff's documents were timely filed.  See Def.'s Mot. at Ex. 3 (letter from MHRC's Executive Director to defense counsel denying the defendant's motion for reconsideration of the Commission's ruling as to the timeliness of the complaint).  In any event, as I stated at the beginning of this opinion, the parties agree that I must apply federal law and I do so.  Following Holowecki and the Code of Federal Regulations, I conclude that

6

Frank is no longer persuasive.[7]  My decision is consistent with the more recent First Circuit case, Aly v. Mohegan Council, Boy Scouts of America, 711 F.3d 34 (1st Cir. 2013).  There, in a Title VII case, the First Circuit said that in Holowecki,

> the [Supreme] Court attempted to resolve a dispute among the lower courts regarding whether the filing of an intake questionnaire may constitute the filing of a "charge" for purposes of the Age Discrimination in Employment Act (ADEA) if all other filing requirements are met.  The Court granted deference to the EEOC's filing requirements, concluding that,
>
>> [i]n addition to the information required by the regulations, . . . if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.
>
> In applying this rule, the Court looked at the label and wording of the questionnaire at issue, noting that
>
>> [d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies.  Construing ambiguities against the drafter may be the more efficient rule to encourage precise expression in other contexts; here, however, the rule would undermine the remedial scheme Congress adopted.  It would encourage individuals to avoid filing errors by retaining counsel, increasing both the cost and likelihood of litigation.

Id. at 42 (alteration in original) (footnote omitted) (citation omitted) (quoting Holowecki, 552 U.S. at 402, 406).  The First Circuit in Aly proceeded to uphold the district court's ruling that a completed Interview Form was sufficient to qualify as a valid initial charge and, after the plaintiff in that case cured the

---

[7] The defendant's citation of pre-Edelman or pre-Holowecki cases generally is not helpful.

7

technical verification defect to "relate back" to the original complaint, that the Interview Form met the timeliness requirement.[8]  Id. at 42-43.  Its reasoning applies with equal force to this plaintiff's completed Intake Questionnaire with attached typed statement.

Accordingly, the defendant Whole Foods's motion to dismiss Counts 1 through 4 of the plaintiff Apire's First Amended Complaint is **DENIED**.[9]

**SO ORDERED.**

**DATED THIS 4TH DAY OF MAY, 2016**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[8] In Aly, the First Circuit stated: "In Holowecki, the Court deemed a complaint insufficient to constitute a charge where said complaint was not labeled a 'Charge of Discrimination,' and its wording indicated that its purpose was to facilitate 'pre-charge filing counseling.'" Aly, 711 F.3d at 43 (quoting Holowecki, 552 U.S. at 405).  In contrast, the First Circuit found the Interview Form in Aly sufficient because it "referred to the filing employee as a 'Complainant' and contained wording referring to the Form itself in the present tense as an '*employment complaint . . . being filed* against the Respondent . . . ." Id. at 44.  In this case, the form the plaintiff signed said "I wish to file a complaint against" and named the defendant, as well as a particular supervisor, and the plaintiff signed the form as the "Complaining Party."  Def.'s Mot. at Ex. 1.  This satisfies Aly.  Moreover, in light of the First Circuit's decision in Aly, I do not find persuasive Nelson v. South Carolina Lottery Commission, No. 3:14-cv-00056-MGL, 2014 WL 6473510 (D.S.C. Nov. 18, 2014), another decision relied on by the defendant in its motion.

[9] I do not reach the plaintiff's argument that although he alleges throughout his First Amended Complaint that the defendant terminated him on July 30, 2013, the time limitation period did not actually start to run until he received his official termination letter on August 1, 2013.

8